**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ROSEMARY A. PESCE,

        Plaintiff,                   Case Number: 09-14331

v.                                       PAUL D. BORMAN
                                            UNITED STATES DISTRICT COURT

COMMISSIONER OF SOCIAL SECURITY,

                                            VIRGINIA M. MORGAN
        Defendant.             UNITED STATES MAGISTRATE JUDGE

_____/

**REPORT AND RECOMMENDATION: (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Rosemary A. Pesce, through her counsel, appeals the Social Security Commissioner's unfavorable decision denying her disability insurance benefits.[1] This case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that Plaintiff's motion for summary judgment be **DENIED**, and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

**I. Background**

On April 21, 2006, Plaintiff applied for disability insurance benefits, alleging a disability onset date of November 8, 2002. (Tr. 109). This is Plaintiff's second attempt to obtain disability insurance benefits; her first application was denied on May 7, 2002. (Tr. 105). At the time Plaintiff

---

[1] Plaintiff's May 2006 application for Supplemental Security Income (SSI) was initially denied on May 16, 2006. (Tr. 48, 95). That denial is not at issue in this appeal.

1

filed her second application for disability benefits she was 44 years old. (Tr. 14). Plaintiff claimed disability based on the following conditions: fibromyalgia, depression, Raynaud's Syndrome, and cholecystitis. (Tr. 109). Plaintiff's application was initially denied on September 6, 2006. (Tr. 56). Thereafter, Plaintiff filed a timely notice for an administrative hearing. (Tr. 61).

On March 13, 2009, Administrative Law Judge Dean C. Metry held a hearing at which Plaintiff was represented by counsel. (Tr. 19). After reviewing Plaintiff's case, ALJ Metry decided that Plaintiff was not under a disability within the meaning of the Social Security Act. (Tr. 7).

ALJ Metry applied the five-step sequential analysis set out in the SSA's regulations to determine whether plaintiff qualified for benefits. 20 C.F.R. § 404.1520(b)-(f). At step one, ALJ Metry found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, November 8, 2002, through her date of last insured, June 30, 2007. (Tr. 10A). At step-two, ALJ Metry found that Plaintiff had the severe impairments of "status post motor-vehicle accident and fibromyalgia." (Tr. 10A). Plaintiff severely injured her right foot in a car accident in 2007, and had surgery to repair it. (Tr. 10A). Plaintiff has also been diagnosed with fibromyalgia. (Tr. 174). ALJ Metry also concluded that Plaintiff's mental impairment of depression was nonsevere. (Tr. 10B). At step three, ALJ Metry decided that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 11). At step four, ALJ Metry concluded that Plaintiff could not perform her past relevant work. (Tr. 14). Nonetheless, at step five, ALJ Metry found that Plaintiff has the residual functional capacity to perform light work with no exposure to extreme cold but only work with routine, repetitive tasks. (Tr. 13).

After receiving the ALJ's unfavorable decision, plaintiff appealed to the Appeals Council

but the Appeals Council denied her request for review. (Tr. 1). Subsequently, plaintiff filed the instant complaint for judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

On November 4, 2009, the Honorable Paul D. Borman referred this case to this court for the resolution of all non-dispositive motions and the issuance of a Report and Recommendation. (Doc. No. 2).

## II. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. *Brainard v. Secretary of HHS*, 889 F.2d 679, 681 (6th Cir. 1989); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in *Brainard*, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "[The] decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key*, 109 F.3d at 273.

## III. Analysis

Plaintiff first argues that the ALJ's finding that her depression is a nonsevere impairment is not supported by substantial evidence in the record. (Pl.'s Mot. 3). Plaintiff relies on the Social Security consultative examiner, Dr. Zaroff, and the medical advisor, Bruce Douglass, PhD, opinions that she has a severe mental impairment to show that the ALJ's finding is contradicted by the evidence in the record. *Id.*

The Commissioner responds that ALJ reasonably determined that Plaintiff's depression was not severe during the time period of November 8, 2002 to June 30, 2007, the relevant period. (Def.'s Mot. 8). The Commissioner argues that both Dr. Zaroff and Dr. Douglass found that Plaintiff had mild to moderate functional limitations and her depression did not significantly limit her ability to perform work activities. (Def.'s Mot. 9-11).

In evaluating whether Plaintiff's depression was a severe impairment, the ALJ was required to consider the "paragraph B" criteria found in 20 C.F.R., Part 404, Subpart P, Appendix 1, which consists of four broad functional areas: activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation.

The ALJ found that Plaintiff has a mild limitation in the activities of daily living functional area, primarily due to her physical impairments. (Tr. 10B). To reach this conclusion, the ALJ relied on Plaintiff's testimony, and evidence in the record, that she takes care of her daughter before and after school, she makes her daughter's lunch on occasion, and she cooks, cleans, shops, and pays bills. (Tr. 10B).

In the functional area of social functioning, the ALJ diverged from the state agency's finding that Plaintiff has moderate limitations in this area, instead finding that the record shows that her limitations are mild. (Tr. 10B). The ALJ noted that Plaintiff lives with her husband and daughter,

4

maintains relationships with her mother and son, attends church, and does not have difficulty getting along with authority figures, which led the ALJ to conclude that her social functioning limitation was mild, not moderate. (Tr. 10B).

With respect to concentration, persistence or pace, the ALJ again disagreed with the state agency's finding that Plaintiff's limitation in that area was moderate, and found that Plaintiff's limitation in that area is mild. (Tr. 10B). The ALJ took issue with the state agency examiner's finding because the examiner found that Plaintiff's thoughts were logical, organized and goal oriented and her memory was intact, she responded to queries within normal limits, and she was able to solve basic math problems. (Tr. 10B). The only task Plaintiff was unable to perform was "serial seven's due to difficulty concentration [sic]." (Tr. 10B). The ALJ further found that Plaintiff's Global Assessment of Functioning score of 52 was not persuasive because the "longitudinal evidence of the record does not show she is so limited due to her mental impairment." (Tr. 10B). The ALJ again noted that Plaintiff is able to read, watch television, grocery shopping, and care for her daughter. (Tr. 10B). These activities, the ALJ concluded, show that Plaintiff has only a mild limitation in the area of concentration, persistence, and pace. (Tr. 10B).

Lastly, the ALJ found that Plaintiff had not experienced any episode of decompensation of extended duration. (Tr. 11).

Based on findings of mild limitations in the first three functional areas, and no episodes of decompensation, the ALJ concluded that Plaintiff's depression was nonsevere. (Tr. 11).

ALJ Metry's conclusion that Plaintiff's depression is a nonsevere impairment is supported by substantial evidence. A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §

5

404.1520(c). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir.1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984)). The severity requirement is a "de minimus hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988).

The relevant period in which to consider whether Plaintiff's depression was a severe impairment is November 8, 2002, the alleged onset of disability, to June 30, 2007, the last date Plaintiff was insured. Plaintiff's medical records from that time period reveal periodic anti-depressant usage. The earliest medical records in the record are from 2003. In February 2003, Plaintiff was prescribed Prozac (Tr. 202), and in June 2003 Plaintiff reported that she was still taking Prozac. (Tr. 173). Plaintiff was prescribed Wellbutrin in October 2003. (Tr. 199). At some piont, Plaintiff stopped taking Wellbutrin, started taking it again in May 2005 (Tr. 194), but by October 2005, Plaintiff was not taking an anti-depressant. (Tr. 178). Plaintiff reported taking Wellbutrin in August 2006. (Tr. 248). Plaintiff also reported that she had been to two therapy sessions in the relevant time period. (Tr. 218-219).

Mark Zaroff, Ph.D., L.P, the state disability agency's psychologist examiner, diagnosed Plaintiff with "major depressive disorder, single episode, moderate severity." (Tr. 222). However, Dr. Zaroff noted that Plaintiff's thoughts were logical, organized, and goal directed during the interview, and that Plaintiff "evidences good contact with reality." (Tr. 220). Dr. Zaroff also observed that Plaintiff has a good relationship with her husband and children, she regularly goes to church, and she shops and does housekeeping when she is able. (Tr. 219-220). Dr. Zaroff assigned

6

Plaintiff a Global Assessment of Functioning score of 52. (Tr. 222).

Notably, no mental health or medical professional opined that Plaintiff is disabled or unable to work due to her depression. In addition, her episodic use of anti-depressants and very little counseling evidence the fact that her depression was not severe. Dr. Zaroff's opinion, therefore, that Plaintiff's depression was moderate in severity is undermined by the medical records and Plaintiff's own testimony as to her daily and weekly activities. Moreover, because Dr. Zaroff is not one of Plaintiff's treating physicians, in fact it does not appear that she has been treated by a psychologist or psychiatrist, the ALJ was not obligated to assign his opinion controlling weight. In light of the substantial evidence in the record that contradicts Dr. Zaroff's opinion regarding the severity of Plaintiff's depression, the ALJ properly discounted the weight he afford to Dr. Zaroff's opinion. Moreover, the record is replete with evidence supporting the ALJ's conclusion that Plaintiff's depression is not a severe impairment; there is no evidence that Plaintiff's depression interferes with her ability to work or her daily life. Accordingly, the court recommends affirming this portion of the ALJ opinion.

Plaintiff next argues that ALJ Metry improperly rejected Bruce G. Douglass, Ph.D.'s, a psychologist for the state's disability agency, opinion regarding the severity of her mental impairment. (Pl.'s Br. 4). The Commissioner responds that the ALJ reasonably did not rely on the portion of Dr. Douglass' opinion in which he stated that Plaintiff had moderate difficulties maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace because Dr. Douglass' opinion was contradicted by evidence in the record that Plaintiff's limitations in those areas were mild. (Def.'s Br. 11).

The ALJ's finding that Dr. Douglass overstated Plaintiff's mental limitations should be

upheld. In considering Dr. Douglass' opinion, the ALJ discounted Dr. Douglass' finding that Plaintiff has moderate limitations in social functioning because the record showed that her limitations are mild. (Tr. 10B). The ALJ cited the following evidence in support of his decision not to rely on Dr. Douglass' opinion: "The claimant lives with her husband and daughter; she maintains a relationship with her mother and son; and she goes to church (Exhibits 3E; 4E). The claimant also reports that she has no difficulty getting along with authority figures (Exhibit 4E/13)." (Tr. 10B). The ALJ also disagreed with Dr. Douglass' finding that Plaintiff has moderate limitations in maintaining concentration, persistence, or pace, instead relying on the evidence that Plaintiff's thoughts were logical, organized, and goal oriented, her memory was intact, she was able to respond to queries, and solve basic mathematical problems. (Tr. 10B).

In making a disability determination, the ALJ may consider the opinion from a state agency health professional who is an expert in Social Security. *See* 20 C.F.R. § 404.1527(f)(2)(i). However, there is no requirement that the ALJ accept the opinion wholesale or even give the opinion controlling weight. Dr. Douglass was not Plaintiff's treating psychologist. When, as is the case here, the examining psychologist's opinion is contradicted by the record, the ALJ is within his discretion to discredit portions of the opinion. The record supports the ALJ's conclusion that Plaintiff's limitations in social functioning and concentration, persistence, and pace are mild. She has relationships with family members, attends church, shops and otherwise interacts with society. Also, her answers to Dr. Douglass' queries show that her concentration limitation was mild: Plaintiff was able to perform all the tasks with the exception of the series seven's. For these reasons, the ALJ properly discounted portions of Dr. Douglass' opinion.

Plaintiff also challenges the ALJ's decision on the ground that ALJ Metry did not give proper

8

weight to Dr. Webb's opinion that Plaintiff is permanently disabled. (Pl.'s Br. 6). Plaintiff argues that ALJ Metry's finding that Plaintiff can stand for 25% of her workday is inconsistent with her physician's opinions that Plaintiff can only stand 10-15 minutes and cannot handle intermittent standing. (Pl.'s Br. 7).

The Commissioner argues that the ALJ gave Dr. Webb's opinion appropriate consideration and provided good reasons why he did not rely on Dr. Webb's opinion that Plaintiff is permanently disabled. (Def.'s Br. 14). The ALJ stated that he would not assign controlling weight to Dr. Webb's opinion because his opinion was contradicted by the medical records from the relevant time period and Plaintiff's daily living activities. (Def.'s Br. 14-15).

After thoroughly discussing Dr. Webb's medical records, the ALJ wrote the following about Dr. Webb's opinion that Plaintiff was completely disabled:

> I considered the June 2001 [sic] opinion from Dr. Webb, noting that the claimant was disabled (Exhibit 11 F/2). I did not assign controlling weight Dr. Web's [sic] opinion because he does not cite to specific treatment records or medical signs and findings. Further, his treatment records do not support his opinion. Additionally, evidence regarding the claimant's activities of daily living is not consistent with his opinion. The record shows she takes care of her 12-year-old daughter before and after school. She is able to drive and shop for groceries. Her mother reports that the claimant cleans twice a week (Exhibit 3E/3). Accordingly, I find that the claimant is able to perform less than light work through November 29, 2007.

On June 1, 2007, Dr. Webb wrote a letter in which he opined that Plaintiff is "totally and permanently disabled from gainful employment." (Tr. 254). As her treating physician, Dr. Webb's opinion was entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2).

In this case, the ALJ found that Dr. Webb's opinion of complete disability was not supported

9

by the medical records or consistent with the medical records and Plaintiff's testimony regarding her daily activities. As the ALJ stated, Dr. Webb did not cite any specific medical records or findings to support his opinion that Plaintiff is completely disabled. In addition, the ALJ noted that Plaintiff's medical records did not support her complete inability to work. The medical records reveal that Plaintiff's physical conditions were stable and she was not limited by those conditions from performing light work. Plaintiff's testimony about her daily and weekly activities is also consistent with the ALJ's conclusion that she can perform light work and inconsistent with Dr. Webb's opinion. The reasons the ALJ stated for deciding not to give Dr. Webb's opinion controlling weight were sufficient and the court recommends deny Plaintiff's summary judgment motion on this ground.

Plaintiff next argues that ALJ Metry erred by failing to give Dr. Jaswal's opinion that Plaintiff is "totally and permanently disabled from gainful employment." (Pl.'s Br. 9). Plaintiff complains that the ALJ's failure to give Dr. Jaswal's opinion controlling weight without citing any contradictory medical evidence is inconsistent with the Social Security Rulings and regulations. (Pl.'s Br. 9).

The Commissioner responds that the ALJ was not required to even consider Dr. Jaswal's opinion because Dr. Jaswal's opinion was given in December 2008, a year and a half after Plaintiff's last insured date. (Def.'s Br. 17). The Commissioner further argues that the December 2008 opinion does not support Plaintiff's argument that she was disabled prior to December 2008. (Def.'s Br. 17).

Dr. Jaswal became Plaintiff's primary care physician after Dr. Webb retired. As a treating physician, Dr. Jaswal's opinion would normally be given controlling weight. However, Plaintiff has not cited any treatment records from Dr. Jaswal showing that Dr. Jaswal treated Plaintiff before June

30, 2007, the last date she was insured. A treating physician's opinion is "minimally probative" when the physician began treatment after the expiration of the claimant's insured status. *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir.1987). In addition, Dr. Jaswal's December 2, 2008 letter, (Tr. 297), was written long after Plaintiff's insured status expired and does not contain an opinion regarding Plaintiff's ability to work prior to June 30, 2007. Given that there is no evidence that Dr. Jaswal treated Plaintiff while she was insured and Dr. Jaswal's letter does not contain an opinion about her ability to work while she was still insured, the ALJ was not required to give Dr. Jaswal's opinion any consideration, much less assign it controlling weight.

Plaintiff also appears to take issue with the ALJ's consideration of the vocational expert's opinion. (Pl.'s Br. 10). Plaintiff's argument, in its entirety, is as follows:

> Present at the administrative hearing was vocational expert, Ms. Michelle Robb. When asked to consider the restriction of standing limited to 10 minutes and the inability to perform intermittent standing throughout the day, she testified that this would eliminate all work (T-42). When asked to consider the restriction or need to take 2-4 unscheduled rest breaks throughout the day, Ms. Robb again testified that this would preclude all work (T-43). Lastly, when asked to consider a hypothetical worker who due to problems with concentration would be significantly slower than the average worker, Ms. Robb again testified this would preclude all work (T-43).

(Pl.'s Br. 9-10).

To the extent that this court construes Plaintiff to be arguing that the ALJ did not wholly accept the vocational expert's opinion, the record does not support Plaintiff's contention. The vocational expert opined that the above cited restrictions would preclude all work in response to Plaintiff's attorney's questions. (Tr. 42-43). The limitations proposed by Plaintiff's attorney were taken from an April 15, 2008 report from the physical therapy program at Saginaw Valley Bone and Joint, which stated that Plaintiff could only stand 10-15 minutes and walk less than a half mile. (Tr.

11

277). As previously discussed, Plaintiff's last insured date was June 30, 2007. The ALJ could not, therefore, consider the limitations proposed by Plaintiff's attorney to the vocational expert because those limitations were prescribed after Plaintiff's insured status expired. The ALJ incorporated the limitations contained in Plaintiff's records prior to the expiration of her insured status. Accordingly, the ALJ did not err.

## **IV. Conclusion**

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for remand be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                          S/Virginia M. Morgan
                                          Virginia M. Morgan
                                          United States Magistrate Judge

Dated: August 18, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on August 18, 2010.

                                            s/Jane Johnson
                                            Case Manager to
                                            Magistrate Judge Virginia M. Morgan